UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| FRANCOISE MAKUIZA, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-000044-LEW |
| | ) | |
| DAVID WESLING, Acting Director | ) | |
| of U.S. Immigration and Customs | ) | |
| Enforcement Boston Field Office, | ) | |
| TODD LYONS, Acting Director of | ) | |
| U.S. Customs and Immigration | ) | |
| Enforcement, *et al.*, | ) | |
| | ) | |
| Respondents | ) | |

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Francoise Makuiza's Petition for Writ of Habeas Corpus (ECF No. 1). Petitioner seeks release from immigration detention. The federal respondents oppose the Petition. For the following reasons, the Petition is granted.

## BACKGROUND

Petitioner is a national of the Democratic Republic of Congo. She was admitted to the United States in 2011 and overstayed her visa by more than 13 years. However, Petitioner applied for asylum in 2016 and received work authorization in 2024. In June 2025, Petitioner received notice to attend an asylum interview in Boston, in July 2025. Clearly, Petitioner is not "in the wind" and has an established place of residence in Maine, where she lives with her husband and son.

On the morning of January 23, 2026, Immigration and Customs Enforcement ("ICE") detained Petitioner while her husband was driving her to work in Portland, Maine. According to ICE's Assistant Field Office Director in Burlington, Massachusetts, "ICE encountered Petitioner at or near Portland, Maine" and "[d]uring this encounter Petitioner admitted that she overstayed her visa and did not have lawful status to be in the United States." Chan Decl. ¶ 9 (ECF No. 9-1). ICE took Petitioner into immediate custody and transported her to Burlington, though it will have some difficulty locating a suitable facility in which to house her due to the lack of bed space for female immigration detainees. *Id.* ¶¶ 10, 14.

Also on January 23, 2026, Petitioner filed in this Court her Petition for Writ of Habeas Corpus, at approximately 4:30 p.m., and the Court issued, at approximately 5:00 p.m., its Emergency Order (ECF No. 4) staying her transfer out of the State of Maine. Additionally, on January 24, the Court issued an Order to Show Cause (ECF No. 5) that directed the Respondents to address the merits of the Petition no later than 5:00 p.m. on January 27. *See* 28 U.S.C. § 2243. Respondents requested a one-day extension, which was granted.

DISCUSSION

In their Return and Response (ECF No. 9), Respondents observe that due to the lack of detention housing for female detainees in Maine, ICE loaded Petitioner for transport to Burlington, Massachusetts, at approximately 4:30 p.m., and delivered her into custody in Burlington, at approximately 6:15 p.m., where she remains today. *See also* Chan Decl. ¶ 10. Respondents state that Petitioner is entitled to a bond hearing but has yet to request

one through administrative channels.  Chan Decl. ¶ 12 ("Petitioner is detained under § 1226 . . . and is bond eligible.").   However, Respondents also acknowledge that "<u>ICE</u> has discretion to release 'provided that the alien must demonstrate to the satisfaction <u>of the officer</u> that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'"  Return & Response at 4 (emphasis added) (quoting 8 C.F.R. § 236.1(c)(8)).  If ICE[1] is not persuaded by Petitioner that her release would not pose a danger to property or persons (there is no evidence that she has ever presented such a danger), and that she would likely appear for future proceedings (she has initiated her own asylum proceeding in the past and maintains a household in Maine), ICE will maintain custody and deny Petitioner release on bond or conditional parole.  If ICE denies release, then Petitioner may request, orally or in writing, a review of ICE's custody determination by an immigration judge.  8 C.F.R. § 1003.19(a) & (b).  If the immigration judge denies relief, then Petitioner may appeal that determination to the Board of Immigration Appeals.  *Id.* § 1003.19(f).

The statute and the regulations cited by Respondents indicate the need for an arrest warrant.  *See* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").  However, Respondents make no mention of the requirement.

---

[1] Technically, according to the INA, it is the Attorney General who may continue to detain, or release, a noncitizen currently in custody, though this authority may be delegated.  8 U.S.C. § 1226(a).  *See also* 8 C.F.R. §§ 236.1(c)(8), (d)(1) ("<u>Any officer authorized to issue a warrant</u> of arrest may, <u>in the officer's discretion</u>, release an alien …  provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." (emphasis added)).

Nor have they supported their Return and Response by filing any arrest warrant issued either pre- or post-arrest.  For reference, the regulation governing "apprehension, custody, and detention" states:

> (b)  Warrant of arrest –
>
> (1)  In general.  At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest. A warrant of arrest may be issued only by [certain] immigration officers . . . and may be served only by [certain] immigration officers . . . .

8 C.F.R. § 236.1 (cross-referencing 8 C.F.R. § 287.5(e)(2) & (e)(3)).  Although the list of officers who can issue a warrant is long, on-the-ground ICE agents do not have the authority to issue on-the-spot warrants unless someone higher up with authority has authorized or delegated that authority.  8 C.F.R. § 287.5(e)(2).

When it comes to warrantless arrests, the INA does not inherently empower any and all ICE officers to arrest without a warrant every noncitizen encountered in the course of dragnet operations that target people based exclusively on alienage status.  *See* 8 U.S.C. § 1357(a); 8 C.F.R. §§ 287.3(b), 287.8(c).  But authorized officers[2] can "interrogate any alien or person believed to be an alien" concerning that person's "right to be or to remain in the United States," and can arrest that person "if [the officer] has reason to believe that the [person] . . . is in the United States in violation of any . . . law or regulation [regulating the admission, exclusion, expulsion, or removal of aliens] and is likely to escape before a

---

[2]  The Court lacks information concerning the identities of the arresting officers or their training or authorization to make arrests.

warrant can be obtained for his arrest," in which case the arrested individual must "be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." 8 U.S.C.A. § 1357(a)(1), (2).[3]  But when arrests are made without a warrant, a custody determination must ordinarily be made within 48 hours, accompanied by a notice to appear, and in the case of continued custody a warrant will be issued *post hoc*.  8 C.F.R. § 287.3(d).[4]

The lawfulness of immigration detention is subject to review by, and unlawful detention is subject to remedy in, a United States District Court under 28 U.S.C. § 2241. The exercise of jurisdiction over this matter is proper because it presents a challenge to the lawfulness of detention rather than the lawfulness of removal proceedings.[5]  *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023) (quoting *Aguilar*, 510 F.3d at 11); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st

---

[3] This is the general authority to make a warrantless arrest of someone with Petitioner's status.  Other provisions of the statute authorize warrantless arrests on other grounds.

[4] In relation to taking the arrestee before an officer with the authority to "examine" aliens, presumably that officer must evaluate the propriety of the warrantless arrest, including the assessment that the arrestee is likely to escape in the absence of a post-hoc warrant and custody determination.

[5] Habeas petitions are subject to a rule that the proper respondent is the person with custody of the petitioner's person, and generally the District Courts will have jurisdiction to grant habeas relief when a petition is filed while the petitioner is in the respondent's custody and within a court's respective jurisdiction.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (explaining that the proper respondent is the person having "immediate custody" of the petitioner, with the power produce the petitioner upon order of the habeas court).  Here, among the named respondents are persons with authority over ICE operations in both Maine and Massachusetts.  Furthermore, the record indicates that Petitioner was in Maine, albeit in transit, when the Petition was filed, as it takes close to 45 minutes to travel overland from Scarborough to Portsmouth, New Hampshire.  This fact supports a finding that this Court has jurisdiction to award relief in this matter.  *See Padilla*, 542 U.S. at 441 (recognizing that a district court can retain jurisdiction despite a transfer that occurs after filing); *Ozturk v. Hyde*, 136 F.4th 382, 392 (2d Cir. 2025); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 393 (D.N.J. 2025); *Van Tran v. Hyde*, No. 25-cv-12546, 2025 WL 3171210, at *4 (D. Mass. Nov. 13, 2025); *Adriana M.Y.M. v. Easterwood*, No. 26-cv-00213, 2026 WL 184721, at *2 (D. Minn. Jan. 24, 2026).

Cir. 2021). The petitioner must prove illegal detention by a preponderance of the evidence. *See Aditya W.H. v. Trump*, 2025 WL 1420131, at \*7 (D. Minn. 2025) (collecting authority).

Based on the factual assertions contained in both the Petition and the Return and Response, I find that Petitioner is entitled by the INA to be processed for detention purposes under 8 U.S.C. § 1226(a).   Respondents challenge the appropriateness of habeas relief, however, because Petitioner "is free to seek a bond hearing at any time while in ICE custody."   Return & Response at 7 (citing 8 C.F.R. § 1003.19).   They argue that it would be inappropriate for the Court to issue an order compelling relief that is available and has not been denied administratively, and that the statutory scheme must be allowed to operate in the first instance.   *Id.*   They cite *Aguilar v. U.S. Immigration and Customs Enforcement*, 510 F.3d 1 (1st Cir. 2007), and quote the following language:

> [I]t is Congress—not the judiciary—that has the responsibility of prescribing a framework for the vindication of [inalienable rights].   When Congress speaks clearly and formulates a regime that satisfies constitutional imperatives, the courts must follow Congress's lead.   In that sense, it does not matter whether a court approves or disapproves of an agency's *modus operandi*.

*Id.* at 24.  [6]

---

[6] Respondents are, in effect, advancing an administrative exhaustion challenge.   Return & Response at 7.   I am not persuaded based on the presentation offered by their declarant, which fail to divulge appropriate action on a warrant.

> "Although exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress, courts have more latitude in dealing with exhaustion questions when Congress has remained silent." *Portela–Gonzalez v. Secretary of the Navy,* 109 F.3d 74, 77 (1st Cir.1997) (internal citation omitted).
> Where the courts have latitude, a court may hear unexhausted claims in " 'circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion.' " *Id.* (quoting *McCarthy v. Madigan,* 503 U.S. 140, 145, 146 (1992)).

*Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010).

I have no difficulty appreciating that the Department of Homeland Security or Immigration and Customs Enforcement should be permitting to effectuate the orderly application of federal immigration law prescribed by Congress. However, I question the notion that the activities that have brought Petitioner and others to court via habeas petitions have generally born the hallmark of orderliness or meticulous observation of statutory details. Here, for example, 8 U.S.C. § 1226 establishes that Petitioner should have been arrested "on a warrant," even if that warrant issued after the fact. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216, 218-19 (BIA 2025); 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."). Congress did not state in the INA that an alien may be arrested and detained pending removal based exclusively on alienage or noncitizen status. Furthermore, to the extent there is discretion to arrest and detain a noncitizen pending removal proceedings, based on considerations of danger and flight risk, an officer with authority needs to exercise that authority. Instead, these officers appear to have deferred making a decision, and as a result, detainees occupy increasingly hard-to-find bed spaces and then file habeas corpus petitions in the Unites States District Courts based on the ambiguity of their detention status, a lack of timely and forthright action on the part of those with authority to issue warrants and make front-line custody determinations, and an administrative pattern and practice of transferring noncitizens to detention facilities remote from their residences.

Petitioner has now been in custody for a week, and an authorized ICE officer should have by now issued and served an arrest warrant based on an affirmative determination that

ongoing detention is warranted, or else determined that release is appropriate and released Petitioner.  As a general proposition, detention without a warrant for in excess of 48 hours is, minimally, problematic or suspect, and is, in any event, contrary to presumptions set out in agency regulations.  *See* 8 C.F.R. § 287.3(d); *cf. Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991) (holding that jurisdictions that afford probable cause determinations within 48 hours of an arrest will, as a general matter, comply with the Fourth Amendment, and placing the burden on the Government to justify longer detentions).

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. am. V.  The Fifth Amendment applies to aliens facing removal proceedings.  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  In *Hernandez-Lara v. Lyons*, the First Circuit held that "due process requires the government to either (1) prove by clear and convincing evidence that [an alien] poses a danger to the community or (2) prove by the preponderance of the evidence that she poses a flight risk" in order to impose detention throughout the period of removal proceedings, including appeals. 10 F.4th 19, 41 (1st Cir. 2021).  That conclusion rested on a *Mathews v. Eldridge* due process analysis for a non-criminal alien who unlawfully entered the United States without being processed at the border.  *Id.* at 27-35.

Petitioner entered the Unites States lawfully but remained longer than her visa authorized.  She is now plainly subject to a discretionary detention regime, as Respondents admit.  To determine whether civil detention violates a detainee's Fifth Amendment due process rights, courts apply the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Hernandez-Lara*, 10 F.4th at 27-35.  Under *Mathews*, courts weigh the following three

8

factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

The first factor supports relief. "The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004). So does the second factor. An ICE officer with authority needs to step up and assess the cause for the warrantless arrest and, if appropriate, issue an arrest warrant and facilitate a prompt bond hearing. That is what the regulations call for, and that process needed to be effectuated within the appropriate timeframe. The third factor also justifies relief. The Government by regulation has assumed the burden of justifying its arrest decisions and has simply neglected to do so in this case. Petitioner is not trying to burden Respondents with any obligations not already placed on them by agency regulations.

In summary, although the Petition is drawn in terms of an entitlement to a bond hearing under *Hernandez-Lara*, and demands such a hearing as a condition to ongoing detention, *see* Petition ¶¶ 22, 23, 31 & Counts I–IV, in fact Petitioner is entitled to have an authorized officer who works for ICE make a preliminary call as to the existence of cause for her detention (without the need for recourse to an immigration judge), and, if detention is deemed appropriate, to issue the missing warrant. That was supposed to have transpired within 48 hours by regulation. *See* 8 C.F.R. § 287.3(d). It has now been a week and the Respondents have offered nothing to support a finding of anything other than

administrative indecision—and perhaps indifference—in that timeframe. Given the circumstances, I grant habeas relief without a hearing, because Respondents have made no effort whatsoever to provide a factual justification for Petitioner's ongoing detention. Nor have they articulated why additional time would be reasonable under the circumstances.[7] Because Petitioner's detention in excess of 48 hours violates the INA and governing regulations absent a demonstration of reasonable cause for it, and because Petitioner's expectations are consistent with existing procedures from the standpoint of the *Mathews v. Eldridge* factors, she should be released from custody.

## CONCLUSION

For the foregoing reasons, the Petition for a writ of habeas corpus is GRANTED (ECF No. 1). It is HEREBY ORDERED that Respondents will release Petitioner from custody and confirm her release with the Court within two hours of her release.

This order has no effect on any decision to institute removal proceedings by proper notice or, if the determination is based on valid ground in the future, to arrest and detain Petitioner pursuant to legitimate process.

Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is DISMISSED AS MOOT.

**SO ORDERED.**

Dated this 30th day of January, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge

---

[7] This case also arises in the context of a line of recent habeas corpus cases in which this Court has identified the absence of a warrant as a ground for release when 8 U.S.C. § 1226(a) is at play. It is, therefore, to be expected that a warrant would be filed in support of a return and response.